T.C. Memo. 1999-420

UNITED STATES TAX COURT

GREGORIO AND VIVIANA MANKITA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14875-97.          Filed December 27, 1999.

Gregorio Mankita and Vivian Mankita, pro se.

<u>Anne W. Durning</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  On April 14, 1997, respondent issued a final determination disallowing petitioners' claim under section 6404(e) to abate interest related to petitioners' 1990 tax year. Petitioners timely filed a petition under section 6404(g)[1] and

---

   [1]  Redesignated sec. 6404(i) by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, secs.
                                        (continued...)

Rule 280.

The issues for decision are:

1.    Whether respondent's denial of petitioners' claim to abate interest relating to petitioners' 1990 tax year was an abuse of discretion.  We hold that it was not.

2.    Whether we have jurisdiction to review respondent's failure to abate the late filing and payment penalty imposed by section 6651(a).  We hold that we do not.

Section references are to the Internal Revenue Code as amended.  Rule references are to the Tax Court Rules of Practice and Procedure.  References to petitioner are to Gregorio Mankita.

FINDINGS OF FACT

Some of the facts are stipulated and are so found.

A.    Petitioners

Petitioners are married and lived in Phoenix, Arizona, when they filed the petition in this case.

Petitioner is licensed as a "contador publico" (public accountant) in Mexico.  He has been a tax preparer in the United States since 1985.

In 1990, petitioners sold an office building in Los Angeles and bought seven houses in Phoenix.

Petitioners applied for and received an extension to file their 1990 return on August 15, 1991.  Petitioners filed their

---

¹(...continued)
3305(a), 3309(a), 112 Stat. 685, 743, 745.

1990 tax return on October 15, 1991.  For 1990, petitioners (1) reported the sale of the office building and purchase of the seven houses as a like-kind exchange under section 1031, (2) deducted a bad debt and Schedule C expenses, and (3) claimed that they overpaid their 1990 Federal income tax by $1,495.

B.    The Audit of Petitioners' 1990 Return

E. Mitzi Morrow (Morrow), a revenue agent, began to audit petitioners' 1990 return around June 1992.  Petitioner met with Morrow on August 13, 1992, and gave her evidence supporting most of petitioners' Schedule C expenses.  He did not give Morrow documentary evidence that showed petitioners' basis in the like-kind exchange properties.  The documents that he gave Morrow did not convince her that petitioners were entitled to a bad debt deduction.

Around September 1992, petitioners hired Albert H. Feldman (Feldman), a C.P.A., to help them with the audit.  Feldman and Morrow met on September 30, 1992.  Feldman gave Morrow more documents on November 25, 1992.

On December 14, 1992, Morrow asked Feldman for more information.  Morrow did not hear from petitioners or Feldman after December 14, 1992.

Morrow reviewed petitioners' case on May 17, 1993.  She disallowed petitioners' bad debt loss because she concluded that petitioners had not substantiated their claim that they had lent money to a third party.  She also concluded that petitioners were

not entitled to treat the sale of the building in Los Angeles and purchase of the houses in Phoenix as a like-kind exchange because petitioners had not substantiated their basis in the properties.

On June 1, 1993, Morrow sent her report to petitioners and Feldman. On June 9, 1993, Morrow invited petitioners to a meeting on June 15, 1993. Neither petitioners nor Feldman attended that meeting. Morrow then closed the case.

C. Filing and Dismissal of Petitioners' Tax Court Petition

Petitioners moved to Mexico City on July 1, 1993. On October 8, 1993, Feldman sent a facsimile message to petitioners saying that he had not received any correspondence from respondent since June 1, 1993.

On November 16, 1993, respondent's examination division asked district counsel to review a proposed notice of deficiency for petitioners' 1990 year. Respondent sent the notice of deficiency to petitioners in Mexico on March 24, 1994.[2]

On February 21, 1994, respondent sent petitioners a $5,385 refund because petitioners had overpaid tax for 1990, 1991, and 1992.

In April or May 1994, petitioner contacted Daniel Dietz (Dietz), respondent's representative at the U.S. Embassy in Mexico City. Dietz suggested that petitioners bring their Tax Court petition for the 1990 year to him so that it could be

_____

[2] Petitioners' petition must have been filed, or mailed to this Court, by Aug. 22, 1994, to be timely. See sec. 6213(a).

delivered safely to the Court through a diplomatic pouch. Petitioners delivered their Tax Court petition to the U.S. Embassy in Mexico City on August 17, 1994. On August 22, 1994, respondent assessed $181,637 in tax and $60,458.83 in interest for petitioners' 1990 tax year.

On September 6, 1994, the petition in which petitioners disputed their 1990 income tax deficiency was filed in the Tax Court. On October 21, 1994, we granted respondent's motion to dismiss for lack of jurisdiction because petitioners' petition was not timely filed.

D.   Respondent's Reconsideration of Petitioners' Case

On a date not stated in the record, Dietz asked respondent's Los Angeles Appeals office to reconsider the assessment for 1990. The Appeals office agreed to do so.

Catherine Keenan (Keenan), an Appeals officer for respondent in Los Angeles, obtained and reviewed the file for petitioners' 1990 tax year sometime between October 21, 1994, and February 1, 1995. Keenan sent a letter to petitioners on December 30, 1994, inviting them to attend a conference. Petitioner met with Keenan on February 1, 1995, and gave her all the information he had.

Keenan reviewed petitioners' case. She estimated the basis for the properties used in the section 1031 exchange. Keenan sent a written proposed settlement of the case to petitioners on March 2, 1995. On March 7, 1995, petitioners sent Keenan a facsimile message in which they acknowledged receipt of the

proposed settlement, claimed interest should be abated because Morrow should have finished the audit more quickly, contended that petitioner's expenses that he incurred to obtain records should offset taxes due, pointed out that they could not tell whether they received credit for Social Security and Federal and State income taxes paid, and notified respondent of their plan to pay in installments. Keenan made no adjustments based on the March 7, 1995, facsimile message. Petitioners agreed to the proposed settlement on April 17, 1996. Keenan's supervisor approved the settlement with petitioners on May 31, 1996.

As a result of the settlement, respondent abated $175,766 in tax and $56,216.95 in interest on September 30, 1996. Later, respondent corrected a math error that favored petitioners.

Respondent assessed $5,871 in net additional tax and interest as a result of the settlement. In response, petitioners paid $3,380 (on dates not stated in the record).

E.  Petitioners' Claim for Abatement and Tax and Interest Due

Petitioners filed a Form 843, Claim for Refund and Request for Abatement, with respondent on October 7, 1996, in which they asked that all interest and penalties relating to their 1990 year that accrued from August 22, 1994, to September 30, 1996, be abated. On April 18, 1997, respondent mailed to petitioners a notice denying petitioners' claim for abatement. On July 10, 1997, petitioners' petition was filed in this Court. In it, petitioners ask us to abate all interest and penalties related to

their 1990 tax year.

On August 14, 1997, respondent issued a final determination denying petitioners' interest abatement claim.[3] Petitioners' amended petition, with respondent's final determination attached, was filed on October 27, 1997.

As of May 13, 1998, petitioners owed $6,680.94 in tax and interest. Petitioners also owed about $1,910 under section 6651(a) for the addition to tax for failing to timely file their return and pay tax. The amount of interest due on the addition to tax under section 6651(a) was $1,456.94 on May 13, 1998.

OPINION

A. Abatement of Interest

1. Contentions of the Parties

Petitioners contend that respondent's failure to abate interest on their 1990 tax liability from April 15, 1991, to the present was an abuse of discretion. Petitioners contend that too much time passed from when respondent began the audit around June 1992 to when respondent issued the notice of deficiency on March 24, 1994. Petitioners contend that Morrow should have settled the case as quickly as Keenan did after she received the case.

Respondent contends that there were no errors or delays due to ministerial acts by respondent and that respondent's refusal

_____

[3] On brief, petitioners and respondent argue that period in dispute is from Apr. 15, 1991, to present. We treat the issue before us as stated in the briefs.

to abate interest was not an abuse of discretion.

2. <u>The Commissioner's Authority To Abate Interest</u>

Under section 6404(e)(1), the Commissioner may abate part or all of an assessment of interest on any deficiency or payment of tax if (a) either (1) the deficiency was attributable to an error or delay by a Service official in performing a ministerial act, or (2) an error or delay by the taxpayer in paying his or her tax is attributable to a Service official's being erroneous or dilatory in performing a ministerial act; and (b) the taxpayer caused no significant aspect of the delay.  Interest is abatable only after the Commissioner has contacted the taxpayer in writing about the deficiency or payment in question.  See sec. 6404(e) (flush language).  We apply an abuse of discretion standard in reviewing the Commissioner's failure to abate interest.  See <u>Krugman v. Commissioner</u>, 112 T.C. 230, 239 (1999).

3. <u>April 15, 1991, to June 3, 1992</u>

We do not take into account any error or delay by the Commissioner that occurs before the Commissioner contacts the taxpayer in writing with respect to the deficiency or payment of tax.  See sec. 6404(e) (flush language); see also <u>Krugman v. Commissioner</u>, <u>supra</u> at 239.  Morrow first contacted petitioners in writing about their deficiency on June 3, 1992.  Thus, interest that accrued for petitioners' 1990 tax year before June 3, 1992, is not abatable.

4.    June 4, 1992, to March 24, 1994

Respondent first sent a letter to petitioners about the audit on June 3, 1992.[4]  Morrow closed the audit on June 15, 1993. The notice of deficiency was forwarded for review by district counsel on November 16, 1993.  Respondent sent the notice of deficiency on March 24, 1994.  We are satisfied by Morrow's detailed testimony that all the time spent in concluding petitioners' examination and sending the notice of deficiency was not due to error or delay in performing a ministerial act.  Thus, respondent's refusal to abate interest that accrued from June 4, 1992, to March 24, 1994, was not an abuse of discretion.

5.    March 25, 1994, to August 17, 1994

---

[4]  Petitioners contend that stipulations 7, 8, and 9 are incorrect.  We disagree.

Stipulations 7, 8, and 9 provide:

   7.   The examination of petitioners' 1990 return commenced in June of 1992 and was conducted by senior tax auditor E. Mitzi Morrow in Van Nuys, California.

   8.   On June 3, 1992, Ms. Morrow sent a letter to petitioners setting an appointment on June 17, 1992 for the examination of their 1990 return.

   9.   Petitioners were unable to attend the June 17, 1992 appointment because they were traveling in Israel.

The Court will permit a party to a stipulation to be relieved from a stipulation if justice requires.  See Rule 91(e). Morrow's testimony and records corroborate the facts stated in stipulations 7, 8, and 9.  Petitioners have offered nothing showing that stipulations 7, 8, or 9 are incorrect.  Thus, we do not relieve petitioners from the binding effect of a stipulation of facts.

Respondent mailed the notice of deficiency on March 24, 1994. Petitioners delivered a petition to the U.S. Embassy in Mexico City on August 17, 1994. It was not an abuse of discretion for respondent not to abate interest for the period from March 25 to August 17, 1994, because respondent made no error or delay in performing a ministerial act. See sec. 6404(e) (flush language).

6.    August 18, 1994, to September 30, 1996

Petitioners' petition was received by the U.S. Embassy in Mexico City on August 17, 1994, and by this Court on September 6, 1994. An unexplained delay in transferring a file is a ministerial error. See, e.g., sec. 301.6404-2T(b), Example (1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987) (a delay in transferring a case, after transfer was approved, is the result of a ministerial act). However, we do not believe that the delay in the Tax Court's receipt of the petition affected the pace of settlement of the case, discussed below, nor did it cause petitioners to delay the payment of interest.

We received petitioners' petition on September 6, 1994, and, on October 21, 1994, we granted respondent's motion to dismiss the petition for lack of jurisdiction because it was not timely filed.

Between October 21, 1994, and February 1, 1995, Dietz asked respondent to reconsider petitioners' case, and Keenan obtained

and reviewed petitioners' file and invited petitioners to a conference. Keenan sent a written settlement offer to petitioners on March 2, 1995. We are convinced by Keenan's testimony that there was no delay due to a ministerial error from October 21, 1994, to March 2, 1995.

Petitioners accepted Keenan's offer and signed the Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, to settle their case on April 17, 1996. Keenan's supervisor approved the settlement on May 31, 1996. Respondent abated the assessment consistent with the settlement on September 30, 1996.

We conclude that respondent's failure to abate interest from August 18, 1994, to September 30, 1996, was not an abuse of discretion.

7. <u>October 1, 1996, to Present</u>

It was not an abuse of discretion for respondent not to abate interest that accrued after September 30, 1996, because that interest accrued solely due to petitioners' failure to pay the liability to which they had agreed.

Petitioners contend essentially that interest that accrued after September 30, 1996, should be abated because respondent should have used the refund paid to petitioners on February 21, 1994, to offset petitioners' 1990 tax deficiency. We disagree. Petitioner could have used those amounts to pay tax deficiencies for 1990. Respondent was under no obligation to use petitioners'

overpayments to offset petitioners' 1990 tax deficiency.

Petitioners contend that interest should be abated to offset expenses they incurred in hiring Feldman and traveling to Mexico to obtain records to support their position in the audit.  We disagree.  Taxpayers are required to maintain proper records.  See sec. 6001.  The Government is not required to reimburse their compliance costs.

8.  Conclusion

We conclude that respondent's denial of petitioners' claim to abate interest from April 15, 1991, to the present relating to their 1990 tax year was not an abuse of discretion.

B.  Addition to Tax for Filing a Return and Paying Tax Late

Petitioners contend that they should not be liable for the addition to tax under section 6651(a) for filing a return and paying tax late.  Petitioners contend that they filed their 1990 return late because petitioner's mother died in early February 1991.

We lack jurisdiction to decide whether petitioners are liable for the addition to tax under section 6651(a) because section 6404(g) does not give us jurisdiction to decide that issue.  See Krugman v. Commissioner, 112 T.C. at 237 (we lack

jurisdiction under section 6404(g) to decide whether the taxpayer is liable for the addition to tax under section 6651).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.